**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

LASHAWNDA J.,                               )
                                            )
        **Plaintiff,**                     )
                                            )
vs.                                         )     **Case No. 4:23-CV-400-JFJ**
                                            )
MARTIN O'MALLEY,[1]                         )
**Commissioner of Social Security,**        )
                                            )
        **Defendant.**                     )

## OPINION AND ORDER

Plaintiff Lashawnda J. seeks judicial review of the decision of the Commissioner of the Social Security Administration denying her claim for disability benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For reasons explained below, the Court affirms the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.     General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic

---

[1] Effective December 20, 2023, pursuant to Federal Rule of Civil Procedure 25(d), Martin O'Malley, Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g).

techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national

economy.  *Williams*, 844 F.2d at 751.  "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary."  *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence.  *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See id.*  A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Id.*  A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).  Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence.  *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

Plaintiff, then a 41-year-old female, applied for Title II disability insurance benefits and Title XVI supplemental security income benefits on March 31, 2017, alleging a disability onset date of December 15, 2015.  R. 23, 674.  Plaintiff claimed she was unable to work due to conditions including multiple spine issues, chronic pain syndrome, and arthritis.  *See* R. 364.  Following initial and reconsideration denials, the ALJ held a hearing then denied Plaintiff claims for benefits on August 9, 2019.  R. 23-41, 97-148.  The Appeals Counsel denied review, and Plaintiff appealed to the United States District Court for the Northern District of Oklahoma.  R. 1-3.  United States

District Judge Gregory Frizzell reversed and remanded the ALJ's decision on June 2, 2021.   R. 771-784.

Upon remand, the ALJ held a telephone hearing on September 29, 2022.  R. 697-724.  On December 20, 2022, the ALJ again found Plaintiff not disabled because she could perform other jobs existing in the national economy.  R. 673-687.  The Appeals Council declined to assume jurisdiction, and Plaintiff again appealed to this Court.  R. 662-664; ECF No. 2.

In the second decision, the ALJ found that Plaintiff's date last insured was June 30, 2018. R. 676.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 15, 2015.  *Id.*  At step two, the ALJ found that Plaintiff had the following severe impairments: lumbar degenerative disc disease, T11 vertebral hemangioma, bilateral knee and hip osteoarthritis, right hip trochanteric bursitis, obesity, and depressive disorder.  *Id.*  The ALJ found Plaintiff's medically determinable impairments of hypertension, gastroesophageal reflux disease, and anemia to be non-severe.  *Id.*

At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that were of such severity to result in listing-level impairments.  R. 677.  In assessing Plaintiff's mental impairments under the "paragraph B" criteria, the ALJ found that Plaintiff had mild limitations in the two areas of (1) understanding, remembering, or applying information, and (2) adapting or managing oneself; and moderate limitations in the two areas of (1) interacting with others, and (2) concentrating, persisting, or maintaining pace.  R. 678.

After evaluating the objective and opinion evidence and Plaintiff's statements, the ALJ concluded that Plaintiff had the RFC to perform a range of sedentary work as follows:

> The claimant is able to lift, carry, push, or pull up to 10 pounds frequently and 20 pounds occasionally.  She is able to sit up to 6 hours in an 8-hour workday; and able to stand and/or walk up to 3 hours in an 8-hour workday.  The need to change positions can be accommodated by the 15-minute morning and afternoon break and

4

the 30-minute lunch period.  The claimant is able to occasionally climb ramps or stairs, stoop, kneel, crouch or crawl, but a job should not involve climbing ladders, ropes, or scaffolds.  The claimant is able to understand, remember and perform simple and some complex tasks.  She is able to interact with supervisors as needed to receive work instructions and is able to interact [with] coworkers for work-related purposes, but a job should not involve teamwork or other work where close communication or cooperation with coworkers is needed in order to complete work tasks.  She is able to interact with the public if needed to refer a member of the public to a supervisor or coworker for assistance, but a job should not involve customer service or other work where interacting with the public is an essential function of the job.

R. 679.  At step four, the ALJ found that Plaintiff was unable to perform any past relevant work.

R. 685.  Based on the testimony of a vocational expert ("VE"), however, the ALJ found at step

five that Plaintiff could perform other unskilled sedentary jobs, such as Type Copy Examiner,

Press Clipping Cutter & Paster, and Touchup Screener.  R. 686-687.  The ALJ determined the

VE's testimony was consistent with the information contained in the Dictionary of Occupational

Titles ("DOT").  R. 687.  Based on the VE's testimony, the ALJ concluded these positions existed

in significant numbers in the national economy.  *Id.*  Accordingly, the ALJ concluded Plaintiff was

not disabled.

## III.    Issues

Plaintiff raises one point of error in her challenge to the denial of benefits, which the Court

divides into four for clarity:[2] (1) the ALJ improperly evaluated the prior administrative medical

and psychological findings; (2) the ALJ's RFC was unsupported by substantial evidence; (2) the

ALJ failed to develop the record; and (4) the ALJ's consistency findings were improper.  ECF No.

13.

---

[2] Plaintiff's briefing is disorganized and difficult to follow.  For example, Plaintiff places her multiple allegations of error under a single heading of failure to "develop the record" and failure to "properly assess the decisional RFC" (ECF No. 13 at 4); the substance of her briefing contains no sub-headers and jumps among numerous arguments and impairments; and most paragraphs exceed an entire page in length.  The Court has attempted to address Plaintiff's unfocused arguments as consistently with her briefing as possible.

IV.     **Analysis**

A.      **ALJ's Analysis of Agency Reviewers' Findings Was Legally Proper**

Plaintiff contends that the ALJ's analysis of the state agency administrative medical and psychological findings was inadequate.  ECF No. 13 at 6-7.  Plaintiff's argument is difficult to follow, but it appears she is arguing the ALJ should have done an individual assessment of each of the six prior agency reviewers' findings and more thoroughly explained her reasons for the persuasiveness finding.  Regarding the medical reviewers' findings (R. 153-186, 191-228), Plaintiff specifically takes issue with the ALJ's reliance on other evidence to conclude that more restrictive stand/walk and postural limitations were warranted than the agency reviewers found. R. 685 (citing R. 1344-1671).  Regarding the agency psychological findings (R. 153-186, 191-228), Plaintiff additionally argues the ALJ insufficiently explained how their findings related to the ALJ's RFC.

For claims filed after March 27, 2017, such as Plaintiff's claim, 20 C.F.R. § 404.1520c and 20 C.F.R. § 416.920c provide that the ALJ will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."  20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ now need only articulate how persuasive she finds each medical source's opinion. 20 C.F.R. §§ 404.1520c(b), 416.920c(b).  Persuasiveness is based primarily on an opinion's supportability and consistency, and the ALJ must explain how she considered those two factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  For supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . , the more persuasive the medical opinions . . . will be." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).  For consistency, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be."  20 C.F.R. §§ 404.1520c(c)(2),

416.920c(c)(2).  The ALJ may, but is typically not required to, discuss other considerations that may affect the persuasiveness of a medical opinion, such as the source's relationship with the claimant, the source's area of specialization, and other factors tending to support or contradict a medical opinion.  20 C.F.R. §§ 404.1520c(b)(2)-(c), 416.920c(b)(2).

### 1.    Medical Agency Findings

The ALJ considered the prior agency findings of medical reviewers Karl Boatman, M.D., and James Metcalf, M.D.  R. 685.  In August 2017, Dr. Boatman opined that Plaintiff could perform light work with occasional left overhead reaching, occasional climbing ladders/ropes/scaffolds, and occasional stooping/crouching.  R. 162-163, 179-182.  In March 2018, Dr. Metcalf agreed with Dr. Boatman's August 2017 opinion.  R. 202-205, 221-224.  In August 2021, Dr. Boatman issued another reconsideration opinion that Plaintiff could perform light work with no other limitations.  R. 797-800.[3]  The ALJ considered these three prior agency findings collectively, finding them "supported by the evidence cited but not wholly consistent with the evidence as a whole."  R. 685.  The ALJ explained that Plaintiff's continued pain management treatment, the August 2021 findings of consultative examiner Coy Yasler, D.O., and the April 15, 2022, examination by Plaintiff's pain management physician, Anil K. Reddy, M.D., all supported "more restrictive stand/walk and postural limitations."  *Id.* (citing R. 1336-1671).

Plaintiff contends the ALJ improperly "conflates" the prior administrative findings "without explanation."  ECF No. 13 at 6.  However, Plaintiff fails to note that the three prior physical agency findings are largely identical.  Dr. Boatman's August 2017 opinion and Dr.

---

[3] In February 2021, Sarah Yoakum, M.D., reviewed Plaintiff's medical records and concluded that, "[w]ithout functioning information, there is insufficient evidence to determine the severity of the conditions."  R. 767.  The report stated that Plaintiff had failed to return required forms for the agency to determine the severity of her conditions.  R. 765.  Dr. Yoakum did not assess an RFC at that time, and the ALJ did not discuss this agency determination.

Metcalf's March 2018 opinion are completely identical, and Dr. Boatman's August 2021 opinion retains the light work finding but without the additional postural limitations. Plaintiff fails to identify any specific differences among the three medical opinions that the ALJ should have separately highlighted.

In addition, the ALJ explained that further postural and stand/walk limitations were warranted than any of the three opinions provided. The ALJ's RFC included a stand/walk limitation of up to 3 hours in an 8-hour workday, compared to 6 hours as provided by the agency reviewers. *Compare* R. 679 *and* R. 162, 179, 202, 221, 798. Among other postural limitations, the ALJ's RFC also provided for no climbing of ladders, ropes or scaffolds, compared with occasional climbing limits in Dr. Boatman's August 2017 opinion and Dr. Metcalf's March 2018 opinion, and no climbing limits in Dr. Boatman's August 2021 opinion. *Compare* R. 679 *and* R. 163, 180, 202, 221, 798.

The ALJ articulated the supportability and consistency factors as required by 20 C.F.R. § 404.1520c and § 416.920c. Plaintiff argues that "fatal" step five errors resulted from the ALJ's analysis of these prior agency findings (ECF No. 13 at 6), but she fails to point to any specific failure in the ALJ's analysis of the opinions that resulted in harmful error. *See Shinseki v. Sanders*, 556 U.S. 396, 408-410 (2009) (burden of showing harmful error normally falls upon party attacking agency's determination); *Mounts v. Astrue*, 479 F. App'x 860, 868 n.2 (10th Cir. 2012) (declining to address argument that ALJ erred by giving Plaintiff additional RFC limitation that "work[ed] to her benefit"); *White v. Colvin*, No. 15-CV-0027-CVE-FHM, 2016 WL 1175492, at *5 n.3 (N.D. Okla. Mar. 23, 2016) (finding ALJ error that operated in claimant's favor to be harmless). Plaintiff appears to argue error resulted from the fact that the various agency reviewers had access to different evidence as her case progressed (ECF No. 13 at 8-9), but Plaintiff fails to

explain in any comprehensible manner how this procedure led to an ALJ error in evaluating the reviewers' findings.

Plaintiff further argues in this section that the ALJ misstated whether certain examinations, such as Dr. Reddy's examination on April 15, 2022, were performed live or by phone.  Even if Plaintiff is correct, she fails to explain how any such possible error may have harmed her, particularly as it pertains to the ALJ's assessment of the agency reviewers' opinions.  *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) ("certain technical errors" are minor enough to be harmless).  The Court will not develop such an argument on Plaintiff's behalf.

### 2.     Psychological Agency Findings

The ALJ also considered the prior administrative findings of psychological reviewers Carolyn Goodrich, Ph.D., Laura Lochner, Ph.D., and Pamela Forducey, Ph.D.  R. 685.  In November 2017, Dr. Goodrich opined that Plaintiff could perform simple and some complex tasks; could relate to others on a superficial work basis; and could adapt to a work situation.  R. 167, 184. In March 2018, Dr. Lochner agreed with Dr. Goodrich's November 2017 opinion.  R. 207, 226. In August 2021, Dr. Forducey issued a reconsideration opinion that Plaintiff had no severe mental impairment.  R. 796.[4]   The ALJ considered these three prior agency findings.  She found Dr. Goodrich and Dr. Lochner's identical opinion "mostly persuasive."  R. 685.  The ALJ explained that the opinion was "supported by the evidence cited."  *Id.*  She found the opinions consistent with Plaintiff's performance on the Montreal Cognitive Assessment ("MoCA"), in which she had deficits in language, abstraction, delayed recall, and attention, and with Plaintiff's chronic pain,

---

[4] In February 2021, Laura Eckert, Ph.D., reviewed Plaintiff's records and concluded that, "[w]ithout functioning information, there is insufficient evidence to determine the severity of the condition."  R. 768.  The report stated that Plaintiff had failed to return required forms for the agency to determine the severity of her conditions.  R. 765.  Dr. Eckert did not assess a mental RFC at that time, and the ALJ did not discuss this agency determination.

"which can affect such things as her ability to interact with others and concentrate." *Id.* (citing R. 581-586, 1344-1671).  The ALJ found the agency reviewers' use of the word "superficial" to describe Plaintiff's contact with others was not a "vocationally relevant term," therefore "further detailed limitations as to social interactions were required." *Id.*  The ALJ found Dr. Forducey's opinion that Plaintiff had no severe mental impairment to be "unpersuasive" because it was "not consistent with the evidence recited above." *Id.*

Plaintiff argues the ALJ's assessment of the psychological agency findings was improper, because the ALJ did not differentiate between the first two opinions, did not summarize the first two opinions, and did not sufficiently articulate the supportability or consistency findings.  ECF No. 13 at 6-7.  Again, Plaintiff fails to explain how any of these alleged errors harmed her in any way.  Plaintiff does not explain how the ALJ should have differentiated the two identical mental opinions, and the Court finds the ALJ's persuasiveness explanation compliant with § 404.1520c and § 416.920c's articulation requirement.  In addition, as with the prior medical agency findings, the ALJ assessed greater mental RFC limitations than the agency reviewers opined.  In particular, the ALJ's RFC included additional social interaction limitations with supervisors, coworkers, and the public.  R. 679.  Plaintiff does not point to any part of the prior agency findings that should have been adopted or rejected from the ALJ's RFC.  The Court identifies no error.

### B.    ALJ's RFC Was Supported by Substantial Evidence

#### 1.    Left Shoulder

Plaintiff argues that the ALJ's RFC failed to account for her left shoulder osteoarthritis, which the ALJ did not find to be a severe impairment in the current decision.  Plaintiff points out that in the ALJ's vacated August 2019 decision, the ALJ found Plaintiff had severe osteoarthritis of the left shoulder, and the RFC included a limitation of occasional reaching overhead with the left, non-dominant upper extremity.  R. 26, 29.  Plaintiff notes that in July 2019, she was observed

to have limited range of motion and diminished strength in left shoulder due to pain, and bicep tenderness.  R. 766 (summary of July 22, 2019, medical visit).  Plaintiff also string-cites a number of medical records related to her left shoulder, dated between May 2016 and January 2020.  *See* R. 469, 477, 588, 599, 603, 605, 609, 1068, 1129, 1336, 1452. Plaintiff further points out that agency reviewers Dr. Boatman and Dr. Metcalf opined an occasional left overhead reaching limitation was necessary in August 2017 and March 2018, respectively.  R. 162-163, 179-182, 202-205, 221-224.

Plaintiff's argument is unpersuasive.  At the September 2022 hearing, Plaintiff testified that her left shoulder was "better" after getting injections for left shoulder bursitis.  R. 710. Plaintiff testified she had not received an injection "in almost four years, but [she] recently got one about two months ago."  *Id.*  Plaintiff's counsel also acknowledged at the hearing that, although most of her impairments had worsened since the previous hearing in June 2019, "her left shoulder and her elbow may be better" after injections.  R. 703.  Plaintiff acknowledges this testimony in her briefing but fails to explain how her left shoulder impairment continues to cause functional impairments.  Plaintiff also does not point to more recent records supporting ongoing left shoulder pain that would require an RFC limitation.

To the extent Plaintiff argues the ALJ was required to explain why she no longer found the left shoulder impairment severe in the second decision, the ALJ was under no obligation to do so, given Plaintiff's testimony and the lack of more recent supporting evidence.  *See Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000) (holding that ALJ did not need to account for alleged limitation "belied by the medical record"); *Adams v. Colvin*, 553 F. App'x 811, 814 (10th Cir. 2014) (holding that the ALJ "did not err by omitting the claimant's [right] shoulder injury from his RFC assessment," because "the record indicates no functional limitation as a result of

[claimant's] shoulder injury, and "[claimant] testified that he moves furniture around and throws a softball, presumably, with his dominant right arm").

To the extent Plaintiff contends that the ALJ should have addressed the "occasional" shoulder limitation noted by the prior agency reviewers, Plaintiff's own testimony and her counsel's statement at the hearing establish that the left shoulder impairment was no longer causing Plaintiff functional limitations. Moreover, as the ALJ noted, Plaintiff's August 2021 physical consultative examination revealed a normal range of motion in the left shoulder, despite an alleged past medical history of left shoulder bursitis. R. 677 (citing R. 1336-1342). As a result, the ALJ did not need to separately discount Dr. Boatman's and Dr. Metcalf's left reaching limitations in evaluating those prior administrative findings.

### 2. Anemia

Plaintiff argues the ALJ improperly evaluated her anemia in the RFC. The ALJ found Plaintiff's anemia non-severe, noting that it was treated with an iron pill and that Plaintiff had a history of blood transfusions but none since 2021. R. 676 (citing 1159-1335). Plaintiff points to records indicating a history of anemia with fatigue and past transfusions. *See* R. 646-648, 1106, 1161, 1169, 1244-1246, 1249, 1265-1269.

Plaintiff's argument is unpersuasive. Plaintiff points to no records indicating the ALJ's analysis of anemia was incomplete or inaccurate, and she identifies no functional limitations resulting from her treated anemia that were not accommodated in the RFC.

### 3. Mental Impairments

Plaintiff contends the ALJ failed to support her mental RFC findings with sufficient evidence. Plaintiff argues the ALJ should have given greater consideration to the findings of Peter Ciali, Ph.D., at the November 2017 psychological consultative exam. Most specifically, Plaintiff argues that the ALJ should have addressed Dr. Ciali's opinion that Plaintiff was "moderately

impaired" in the "ability to perform work related mental activities including remembering information, understanding instructions, and maintaining sustained concentration."   R. 586. Plaintiff contends that, if the ALJ had adopted these mental limitations, she would have assigned greater mental RFC limitations that may have ruled out her ability to perform the step-five jobs.

Plaintiff's argument is unavailing.   The ALJ discussed Dr. Ciali's examination extensively. R. 678, 684, 685.   In discussing Plaintiff's mental limitations at step two, the ALJ reviewed Dr. Ciali's findings, including his observation that Plaintiff demonstrated tangential thought processes, scored a below-normal rating of 20/30 on the Montreal Cognitive Assessment ("MoCA") with deficits in language, abstraction, and delayed recall, had normal speech and good eye contact, was easily distracted, and was polite and cooperative.   R. 678.   In evaluating the medical opinions of record, the ALJ found Dr. Ciali's opinion that Plaintiff would have moderate impairment in the ability to remember information, understand instructions, maintain sustained concentration, and socially interact and adapt, to be persuasive "[o]n the whole."   R. 685.   The ALJ also noted that Dr. Ciali's examination and Plaintiff's MoCA score were five years old, and that Dr. Ciali did not provide a medical opinion with concrete, quantifiable limitations.   *Id.*   The ALJ noted that the RFC limitations "are more consistent with the claimant's reports of chronic pain managed with narcotic pain medications."   *Id.* (citing R. 1344-1671).   In the RFC, the ALJ found that Plaintiff was "able to understand, remember, and perform simple and some complex tasks," and that she had some social interaction limitations.   R. 679.

Plaintiff argues the ALJ's stated reasons for finding Dr. Ciali's opinion persuasive "on the whole" were insufficient and indicative that further mental opinion evidence was required. However, the ALJ's stated findings regarding supportability and consistency are accurate and sufficient, particularly given that Dr. Ciali did not provide an opinion with specific mental RFC

limitations.  Further, the ALJ explained elsewhere that Plaintiff had not received any mental health treatment in years, did not offer much testimony as to her mental health, and was generally observed during other mental status examinations to be cooperative and pleasant, despite one instance in which a nurse noted rude behavior over the telephone.  R. 684 (citing R. 1335, 1337, 1624).

The Court identifies no error in the ALJ's evaluation of Plaintiff's mental RFC or Dr. Ciali's opinion.[5]  To the extent Plaintiff argues the ALJ was required to adopt Dr. Ciali's opinion that Plaintiff had "moderate" impairment in the ability to remember information and understand instructions, this argument is unavailing.  The ALJ explained her reasons for deviating from Dr. Ciali's opinion, and the ALJ noted "mild" limitations in the "paragraph B" area of understanding, remembering, or applying information, while citing Dr. Ciali's opinion.  R. 678.

To the extent Plaintiff argues further mental RFC limitations were required, based on the ALJ's finding of "moderate" limitations in the paragraph B functional area of "concentration, persisting, or maintaining pace" at step three, this argument also fails.  An ALJ is not necessarily bound by her step-three mental findings when determining a claimant's RFC.  *See* Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *4; *Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) ("The ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment."); *Richards v. Colvin*, 640 F. App'x 786, 790 (10th Cir. 2016) (rejecting claimant's argument that simple-work and unskilled work limitations are never sufficient to address a claimant's moderate problems with concentration, persistence, and pace, citing *Vigil*).

---

[5] Because the Court finds no error in the ALJ's mental RFC limitations, the Court does not address Plaintiff's argument that a hypothetical, reduced RFC limitation of understanding "simple instructions" would be inconsistent with reasoning level two jobs.

The ALJ explained this principle in the decision.   R. 679 (stating that the mental limitations identified in the "paragraph B" functional criteria are not an RFC assessment but are used to rate the severity of mental impairments at steps two and three, and the mental RFC "requires a more detailed assessment of the areas of mental functioning").   While the ALJ must consider evidence of mental impairments when formulating an RFC or hypothetical question to the VE, the ALJ is not required to expressly include step-two and step-three findings as to paragraph B mental limits in the RFC.   *See* SSR 96-8p (stating that the mental RFC determination requires a "more detailed assessment" of the various functions contained in the broad mental limitation categories listed at steps two and three).   As explained above, the ALJ's mental RFC was supported by substantial evidence, and no further limitations were required.

### C.    ALJ Adequately Developed the Record

Plaintiff argues the ALJ failed to properly develop the record to account for various physical impairments, namely, spondylolisthesis, heart problems, anemia, bilateral hip osteoarthritis, and hip bursitis.   Plaintiff contends the ALJ relied largely on her own speculation and her own interpretation of the medical evidence, rather than relying on the evidence and medical expert opinions.   Plaintiff objects generally to the ALJ's physical RFC, arguing in particular that Plaintiff's physical impairments would have made her unable to stand or walk for three hours per workday, contrary to the ALJ's RFC.   *See* ECF No. 13 at 12-13 (citing records dated between December 2018 and August 2022, endorsing pain in back and extremities, fatigue, and various physical impairments).   Regarding spondylolisthesis, Plaintiff also points to records indicating worsening of her condition by 2020.   R. 614, 1109, 154-1155, 1381, 1403-1404.   Plaintiff alleges that, given these various impairments, the ALJ should have ordered another medical source opinion to establish the RFC.   Plaintiff similarly appears to argue that another psychological

opinion was required, because the ALJ relied only on her own speculation in support of the mental RFC findings.  ECF No. 13 at 14-15.

The ALJ has a "basic obligation" in every social security case to develop the record consistent with the issues raised.  *Cowan v. Astrue*, 552 F.3d 1182, 1187 (10th Cir. 2008) (quoting *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir.1993)).  The ALJ's duty "is one of inquiry, ensuring that the ALJ is informed about facts relevant to his decision and learns the claimant's own version of those facts."  *Id.*  The ALJ "does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning"; instead, the "standard is one of reasonable good judgment."  *Hawkins v. Chater*, 113 F.3d 1162, 1168 (10th Cir. 1997).

The Court finds the ALJ adequately developed the record.  The Court rejects Plaintiff's argument that the ALJ lacked substantial evidence on which to base an RFC.  The ALJ considered Plaintiff's ability to stand/walk, and she relied in part on the agency reviewers' opinions in establishing the physical RFC.  The ALJ noted many of Plaintiff's medical records, which showed that she endorsed low back and extremity pain, and that imaging supported impairments of the lumbar and thoracic spine, but that Plaintiff has declined surgical intervention.  R. 682-683.  The August 2021 physical consultative exam also indicated reduced and painful lumbar extension and left-sided bending, weak heel walking on the left, weak toe walking bilaterally, and positive supine straight-leg raises on the left; but no tenderness or muscle spasm in the lumbar spine, no loss of sensation or strength in the lower extremities, and stable gait with no use of an assistive device.  R. 682-683 (citing R. 1336-1342).  The ALJ also found Plaintiff's anemia to be non-severe, as treated with an iron pill and no blood transfusions since 2021.  R. 676 (citing R. 1157-1335).

Regarding mental impairments, the ALJ relied in part on the consultative findings of Dr. Ciali from the November 2017 psychological consultative exam.  R. 685 (citing R. 582-586).  As explained above in Part IV.B.3, the ALJ summarized Dr. Ciali's findings and found Dr. Ciali's opinion that Plaintiff would have moderate impairment in the ability to remember information, understand instructions, maintain sustained concentration, and socially interact and adapt to be persuasive "[o]n the whole."   R. 684, 685 (citing R. 586).   As explained above, the ALJ appropriately relied in part on this opinion in determining Plaintiff's mental RFC, and no further opinion evidence was necessary.   The ALJ also explained that Plaintiff "did not offer much testimony as to her mental health," and plaintiff's chronic pain managed with narcotic pain medications were more consistent with the RFC limitations.  R. 684, 685.

Plaintiff points to no material conflict in the medical evidence, inconclusive treatment notes or tests, or untreated diagnoses that require additional explanation.  The ALJ certainly considered Plaintiff's ability to stand/walk and perform within the RFC's mental limits, and she had sufficient evidence in the record to give Plaintiff RFC limitations to account for her lower back pain and other physical and mental impairments. *See generally Cowan*, 552 F.3d at 1187 (finding "no need" to develop record with consultative exam because "sufficient information existed" for ALJ to make disability determination).

Plaintiff contends that, because the ALJ's evaluation of the agency reviewers' opinions regarding physical limitations was allegedly deficient, the ALJ was obliged to obtain additional opinion evidence to support the RFC limitation of standing/walking for three hours.  The Court rejects this argument.  First, the ALJ's RFC need not correspond directly to a specific medical opinion.   *Chapo v. Astrue*, 682 F.3d 1285, 1288-89 (10th Cir. 2012) (finding "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific

medical opinion on the functional capacity in question," and rejecting argument that there must be "specific, affirmative medical evidence on the record as to each requirement of an exertional work level before an ALJ can determine RFC within that category").  Second, as explained above in Part IV.A, Plaintiff provides no grounds indicating the ALJ's analysis of the agency reviewers' opinions was deficient.

The Court further rejects Plaintiff's argument that additional evidence was required, simply because the ALJ's first opinion provided a different physical and mental RFC.  *See* R. 29 (RFC in ALJ's vacated August 9, 2019, decision).  An ALJ considering a case on remand is not bound to her earlier decision.  *Campbell v. Bowen*, 822 F.2d 1518, 1521-22 (10th Cir. 1987).  *See* 20 C.F.R. §§ 404.977(b), 416.1477(b) (explaining that, in the event of a remand order, the ALJ "shall take any action that is ordered by the Appeals Council and may take any additional action that is not inconsistent with the Appeals Council's remand order").  "To hold otherwise would discourage administrative law judges from reviewing the record on remand, checking initial findings of fact, and making corrections, if appropriate."  *Campbell*, 822 F.2d at 1522 (finding no error in ALJ's redetermination of RFC on remand, where it was not inconsistent with Appeals Council's order).  *See Hamlin v. Barnhart,* 365 F.3d 1208, 1224 (10th Cir. 2004) (stating that "[i]t was certainly within the ALJ's province, upon reexamining [claimant's] record [after district court and Appeals Council remand], to revise his RFC category").

Here, the ALJ was not bound on remand by her prior determination that Plaintiff had an ability to stand/walk for two hours.  Before issuing the second decision, the ALJ held another hearing, at which Plaintiff testified as to her current conditions.  Plaintiff also submitted updated records regarding her impairments, which showed Plaintiff had ongoing lumbar spine problems but declined surgical management.  R. 1144-1145 (May 2020 lumbar spine MRI), R. 1152-1155

(July 2020 evaluation at which Richard Drake, D.O., recommended surgery, which Plaintiff said she would consider). The ALJ noted Plaintiff's issues with pain and reduced ranges of motion in the hips, but she noted that by July 2020, Plaintiff had "normal hips with intact sensation and 5/5 strength and negative straight leg raises." R. 683 (citing R. 1152-1155). The ALJ also noted the August 2021 consultative exam, at which Dr. Yasler noted slightly reduced ranges of motion in the hips and "normal knees with no loss of sensation or strength in the lower extremities and stable gait with no use of an assistive device." R. 683 (citing R. 1336-1342). The ALJ further noted Plainitf's obesity "likely exacerbates her lower extremity joint pain and back pain" but "this pain does not rise to the functionally limiting level the claimant alleges." R. 684. The ALJ considered the additional evidence in finding that Plaintiff was limited to a range of sedentary work with ability to stand/walk up to three hours per workday, noting that the three-hour limitation was "due to obesity, spine pain, and bilateral knee and hip pain." R. 684. Accordingly, the ALJ's modified sedentary RFC in the second decision was supported by substantial evidence.

Likewise, the ALJ was not bound on remand by her prior determination that Plaintiff was able to perform "simple, routine tasks." R. 29. The ALJ explained in the second decision that Plaintiff "did not offer much testimony as to her mental health" and "ha[d] not received any mental health treatment in years." R. 684. The ALJ noted that Plaintiff was not "treated in the ER or hospital for any exacerbation of psychological symptoms." R. 684. The ALJ further explained that Plaintiff's pain management physician, Dr. Reddy, "clearly never witnessed any behavioral, cognitive, or emotional problems that stopped him from prescribing narcotic pain medications for the entirety of the record." At the August 2021 physical consultative exam, Plaintiff was noted to be cooperative, and in April 2022, Dr. Reddy noted she was pleasant. R. 684 (citing R. 1337, 1624). The ALJ noted one instance of rude behavior over the telephone to a nurse in April 2021.

*Id.* (citing R. 1624).  Plaintiff does not refute any of this evidence, instead pointing to two instances of elevated depression scores in 2020 and 2022, and a report of anxiety in April 2020 with an impression of "panic state" and prescription for hydroxyzine.  R. 1273, 1360, 1609.  These isolated records do not overwhelm the ALJ's current mental findings or warrant further record development.  The ALJ was entitled to adjust the mental RFC to include "simple and some complex tasks," in light of the passage of time and additional evidence.  R. 679.

Plaintiff fails to show any support for mental or physical functional limitations that exceed the ALJ's RFC.  The ALJ appropriately relied on the updated medical and opinion evidence to support the RFC in the current decision.  *Cf. Fleetwood v. Barnhart*, 211 F. App'x 736, 740-41 (10th Cir. 2007) (finding ALJ's RFC findings unsupported by substantial evidence, where ALJ relied only on "check-the-box" forms from state agency medical consultants, and no other medical records supported ALJ's conclusory RFC findings); *Mallory v. Colvin*, No. 13-1426-SAC, 2015 WL 1204991, at *4 (D. Kan. Mar. 17, 2015) (finding ALJ's physical RFC unsupported by substantial evidence where there was "absolutely no medical evidence regarding plaintiff's physical RFC," and ALJ's decision was "devoid of any identifiable discussion explaining how the ALJ arrived at his physical RFC findings based on the evidence, or how the evidence supported his physical RFC findings").

### D.    ALJ's Consistency Analysis Was Supported by Substantial Evidence

Plaintiff argues the ALJ's consistency analysis was improper.  In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record.  Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *7 (Mar. 28, 2016).  If they are consistent, then the ALJ "will determine that the individual's

symptoms are more likely to reduce his or her capacities to perform work-related activities." *Id.*

If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely

to reduce his or her capacities to perform work-related activities." *Id.*  Factors the ALJ should

consider in determining whether a claimant's pain is disabling include the claimant's attempts to

find relief and willingness to try any treatment prescribed; a claimant's regular contact with a

doctor; the possibility that psychological disorders combine with physical problems; the claimant's

daily activities; and the dosage, effectiveness, and side effects of the claimant's medication.

*Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012); *see also* SSR 16-3p at *7 (listing

similar factors); 20 C.F.R. §§ 404.1529(c)(3).[6]

Consistency findings are "peculiarly the province of the finder of fact," and courts should

"not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552

F.3d 1182, 1190 (10th Cir. 2008) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995)).

If the ALJ sets forth the specific evidence she relies on in evaluating the consistency of the

claimant's subjective complaints with other evidence, then the ALJ "need not make a formalistic

factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (cleaned up).

"[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id.*

Here, the ALJ found Plaintiff's medically determinable impairments "could reasonably be

expected to cause the alleged symptoms," but her statements concerning the intensity, persistence,

and limiting effects of those symptoms were "not entirely consistent with the medical and other

evidence in the record." R. 680.  After discussing the updated medical record, the ALJ noted that

---

[6] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis. *See* SSR 16-3p (superseding SSR 96-7p).  In practice, there is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill*, 688 F. App'x 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with the prior approach taken by Tenth Circuit).   Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

Plaintiff "testified to severe exertional and functional limitations, swelling in the right hip, use of cane or wheeled walker, falls, nerve pain, pain in the back, hips, knees, and feet, and poor sleep," but her "statements about the intensity, persistence, and limiting effects of her symptoms are inconsistent with the objective evidence."  R. 682.

The ALJ then explained in detail the records that were inconsistent with her testimony.  R. 682-684.  Relevant here, the ALJ noted that Plaintiff testified that Dr. Drake told her that "her spine is no longer attached to her pelvis," but there was no evidence of that on imaging.  R. 682. The ALJ reviewed the most recent MRI of Plaintiff's lumbar spine, which showed mild lumbar spondylosis, and moderate to severe left and moderate right foraminal stenosis at L5-S1 in May 2020.  *Id.* (citing R. 1144-1145).  The ALJ also reviewed the most recent thoracic spine MRI, which revealed thoracic scoliosis and T11 vertebral hemangioma in December 2018.  *Id.* (citing R. 632).  The ALJ also noted that, despite the severity of Plaintiff's allegations of pain and reduced functioning, she has not pursued surgery but has instead pursued pain management related to her back, knees, and hips.  R. 683 (citing R. 450-472, 479-483, 495-499, 546-580, 595-610, 1066-1073, 1124-1134, 1344-1455, 1456-1570, 1571-1671).

The ALJ noted Plaintiff's testimony that she had delayed surgery because she still has a minor child at home and lacks adequate help at home for post-surgery recovery.  *Id.*  The ALJ stated that such explanation was "of course reasonable," but it was not clear how Plaintiff's current level of functioning was such that a recovery would severely decrease her current level of functioning.  *Id.*  The ALJ noted Plaintiff's testimony that she did not grocery shop, cook, drive, do laundry, or attend many school functions, and her pain was "so intense and unrelenting" that she could sit and walk for only 15 minutes, needed to ambulate only with an assistive device, suffered falls, did not sleep well due to pain, and spent most of the day lying down.  *Id.*  The ALJ

22

noted that Plaintiff had received steady medications for pain, her pain management doctor had recommended conservative treatment, and in 2022, Plaintiff had continued to decline injections. *Id.* (citing R. 1344-1455, 1456-1570, 1571-1671). Finally, the ALJ noted that, although Plaintiff testified to falls and repeatedly reported the same to Dr. Reddy, she was never observed to use an assistive device and there was no evidence she was ever prescribed one. R. 684 (citing R. 1571, 1602, 1610).

Plaintiff argues this ALJ's consistency analysis related to her Grade II spondylolisthesis was insufficient, because the ALJ failed to address her limited functioning due to back pain or her decreased functioning that would follow surgery. ECF No. 13 at 9-10. The Court rejects this argument and finds that the ALJ's consistency analysis was proper. As explained above, the ALJ discussed Plaintiff's alleged limited functioning due to pain, but she found Plaintiff's allegations inconsistent with the medical record. The ALJ found Plaintiff's explanation for declining surgery to be inconsistent with her alleged current limited functioning, where Plaintiff testified she already spent most of the day lying down due to pain and had extremely limited sitting and walking ability. The ALJ also correctly noted that she was not observed to use an assistive device, despite alleged frequent falls and allegations that she can ambulate only with an assistive device.

The Court identifies no error in this analysis and finds the ALJ's consistency discussion satisfies SSR 16-3p. Plaintiff only asks the Court to re-weigh the evidence, which is not permitted. *See Hackett*, 395 F.3d at 1172; *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## V.    Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED.**

**SO ORDERED** this 16th day of September, 2024.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**